In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 18-3000

ROMUALD TYBURSKI,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16-cv-09228 — **John Z. Lee**, *Judge.*

_____

ARGUED APRIL 20, 2020 — DECIDED JULY 1, 2020

_____

Before WOOD, *Chief Judge*, and SYKES and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. In 2014, Romuald ("Roman") Tyburski, then age seventy-four, applied for a promotion with his employer, the City of Chicago's Department of Water Management, but the City rejected his application. Tyburski sued, claiming that the City denied him the promotion because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634. He also brought a hostile

work environment claim under the ADEA regarding harassment he allegedly experienced at two Department of Water Management facilities: Central Park Pumping Station ("Central Park") and Jardine Water Purification Plant ("Jardine"). The district court ultimately granted summary judgment in favor of the City.

Tyburski has not supplied evidence showing that his age, rather than his failing score on the requisite verbal exam, was the reason he missed out on the desired promotion. Furthermore, assuming a hostile work environment claim is cognizable under the ADEA, Tyburski failed to present sufficient evidence for a factfinder to conclude that the purported harassment he experienced was severe or pervasive. And Tyburski failed to exhaust this claim regarding conduct that allegedly occurred at Jardine, as he did not file a charge with the Equal Employment Opportunity Commission ("EEOC") reporting that conduct. Summary judgment was therefore appropriate, and we affirm.

## I. Background

Roman Tyburski currently works for the City of Chicago as an engineer with the Department of Water Management. The City hired Tyburski as an Operating Engineer – Group C ("OEC") in 1993, when Tyburski was fifty-three years old. In 2013, Tyburski received a promotion to his current position, Operating Engineer – Group A ("OEA"). Applicants seeking to become OEAs must successfully pass a written and verbal exam. At the time of his promotion to OEA, Tyburski was seventy-three years old. In September 2013, after Tyburski received his promotion, the City assigned him to Central Park.

## A. Application for Assistant Chief Promotion

In 2014, one year after his OEA promotion, Tyburski applied for another—this time, to the position of Assistant Chief Operating Engineer ("ACOE"). Successful candidates must pass a three-part examination: two parts written and one part verbal. To pass each of the written exams, applicants must score at least seventy percent; to pass the verbal, sixty percent. On the verbal exam, each of the five questions could receive a possible score of five points. Raters multiplied these scores by four to obtain a total score out of one hundred points.

Two Chief Operating Engineers—James McCarthy (then age sixty-two), who had previously interviewed Tyburski in the course of his successful application to become an OEA, and Maurice Walsh (then age fifty-three)—conducted the verbal ACOE exams. McCarthy and Walsh used the City's Human Resources standard exam questions, answers, and scoring rubric.

Twenty-nine of the thirty-two candidates who completed the written exam passed, including Tyburski. Thirteen of these twenty-nine candidates passed the verbal exam and received a promotion to ACOE. The passing candidates ranged in age from twenty-eight to fifty-six, and seven of them were over age forty.

Walsh gave Tyburski a rating of three for the first of the five questions and a rating of two for the other four questions. When multiplied, this resulted in a total score of forty-four. McCarthy gave Tyburski a rating of two for all five questions, for a total score—once multiplied—of forty. Averaging these scores together, Tyburski received a forty-two percent on the

verbal exam, below the passing threshold of sixty. The City did not promote him.

During the verbal exam, one question asked applicants to describe the steps necessary to put a centrifugal pump into service. Tyburski asked McCarthy and Walsh if he could answer the question by explaining the process of putting a turbine powered centrifugal pump into service. McCarthy and Walsh gave him permission to do so. Tyburski proceeded to answer the question in that manner. The completed rubrics evaluating Tyburski's interview demonstrate that Tyburski did not receive full credit because his answer was limited to discussing the turbine powered centrifugal pump.

In October 2014, Tyburski filed an internal grievance complaining about his failure to receive the promotion to ACOE. The grievance alleged that his department "promoted an Engineer of lesser rank (OEC) and lesser seniority with no supervisory experience as required …."

**B. Alleged Harassment and Retaliation at Central Park**

Tyburski contends his coworkers at Central Park demeaned and harassed him because of his age. Brian Sumner, an OEA who would sometimes take on the role of ACOE when the usual ACOE had the day off, would tell Tyburski he was too old and that people of Tyburski's age should not hold the OEA position. Tyburski claims that Sumner would make such comments at "every opportunity." Whenever Tyburski complained about Sumner's comments, Sumner would refrain for "a week or two weeks" before resuming again. In response to Tyburski's complaints, the City had Sumner take the subordinate role of OEC and report to Tyburski on the

days that Tyburski was working, so Tyburski would not have to take orders from him.

Another colleague, OEC Jeff Worden, mentioned Tyburski's age "about three or four times" during their shifts together. In one incident in 2012, before they both received a transfer to Central Park, Tyburski asked Worden if he could join him for laps during lunch, but Worden responded, "Roman, you [sic] too old. You cannot keep up with me." In another incident in 2015, when Tyburski criticized Worden's performance, Worden responded that Tyburski was "f**king old" and did not know what he was doing.

Tyburski also cites harassment from Carl Sanderson, another OEC. Although most of the time Tyburski and Sanderson had no conflicts and a good working relationship, Tyburski claims Sanderson harassed him in—at most—five separate incidents. Tyburski testified that on two occasions, around late 2014 or early 2015, Sanderson told him, "Roman, you are old and you [sic] piece of shit."

Tyburski also complains about conduct from Brandon Mecher, an ACOE and his superior. Tyburski alleges that Mecher *implied* he was too old for his job and assigned him tasks beneath his position, such as boiler water tests. Tyburski claims that he has never seen another OEA perform these tasks. Tyburski also testified that when he complained about his assignment to these tasks, Chief Operating Engineer Andre Holland told him to "just do it."

On April 21, 2015, Tyburski filed his first of three charges with the EEOC. In that charge, Tyburski complained that the City denied him a promotion due to his age, that Sumner had subjected him to discriminatory age-related comments, and

that his coworkers demeaned, ridiculed, and harassed him because of his age and because he filed a complaint. Tyburski did not discuss his EEOC charge with his coworkers.

On June 1, 2015, while Tyburski was closing a boiler room valve, Sumner told him, "Roman, you don't know what the f**k you doing." Sumner then grabbed him and yanked him away from the valve. Tyburski does not claim that Sumner said anything about his age during this interaction.

On July 2, 2015, Tyburski filed a second charge with the EEOC alleging age discrimination and retaliation for his first EEOC charge. Specifically, Tyburski alleged Sumner "harassed and physically intimidated" him by "shoving [him] into a steel object causing injury." He also alleged that Pumping Engineer Mark O'Malley encouraged Sumner to harass and intimidate him to force him to quit. He also reported receiving a memo temporarily reassigning him in retaliation for his original EEOC charge (a threat that never came to fruition), and that "[o]ther employees who did not file an EEOC discrimination complaint have not been harassed, physically intimidated, and threatened with an undesirable job transfer." Like his first EEOC charge, Tyburski did not discuss this EEOC charge with his coworkers.

On August 11, 2015, Mecher assigned Tyburski to mop and scrub the garage floor at Central Park, which Tyburski believed was improper because he did not park his car in the garage and OEAs typically do not mop or scrub floors. Tyburski then received a "counseling note" explaining that if he did not scrub or mop the floor, Chicago police would escort him out of the facility. Tyburski complained internally about his assignment to these tasks.

On August 19, 2015, Tyburski filed his third EEOC charge, this time alleging that Mecher retaliated against him for filing prior charges by harassing him and requiring him to sweep and mop a garage floor, despite the absence of these tasks from the duties listed in his job description. He further explained, "Mr. Mecher told me, at the time he was hired to work at the Central Park location, where I work, that 'Group A Engineers are not to do any cleaning.' Therefore, his actions against me were clearly meant to demean, harass, or force me to quit my job." As with his first two EEOC charges, Tyburski did not discuss this EEOC charge with his coworkers.

On September 8, 2015, Mecher told Tyburski he was "really stupid" and "did not know what he was doing." In response, Tyburski swung a foot-long wrench he was carrying, hitting a steel bench in front of him, and told Mecher to stop harassing him. As a consequence of his behavior, Tyburski was asked to leave the station. The City Department of Human Resources investigated the incident, resulting in Tyburski receiving a one-day suspension.

**C. Transfer to Jardine**

After the altercation with Mecher, Deputy Commissioner Alan Stark reassigned Tyburski from Central Park to Jardine, consistent with department practice after a violent incident. Tyburski has several complaints about his time at Jardine. First, Tyburski contends he was transferred to Jardine because of his age. Second, Tyburski alleges that several of his Jardine coworkers made comments to him about retirement, although he only specifically identifies Mark O'Malley as a culprit. Third, Tyburski claims he did not receive any training at Jardine despite new job duties there, which deprived him an opportunity to receive an ACOE promotion. Fourth,

Tyburski states he was not given a chair for months, and when he did receive a chair, it was heavy and he had to lug it a quarter mile to his work station. Fifth, Tyburski complains about his assignment to menial duties, such as cleaning filter tables in a cold and polluted room. And, finally, Tyburski protests that he received temporary time sheets without his name pre-printed and that his engineering license hung on a lower tier of a wall than his seniority deserved. When Tyburski complained about his license placement to Paul Gutierrez, ACOE at Jardine, Gutierrez responded "you shouldn't be here," and "[w]herever you go you cause trouble."

**D. Procedural History**

Tyburski filed this action against the City bringing non-promotion and hostile work environment claims under the ADEA. The City moved for summary judgment, and the district court granted the City's motion. In doing so, the court first determined that Tyburski failed to establish a prima facie case under the traditional burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), because he failed to point to at least one similarly situated younger comparator—here, someone who also scored below the sixty-percent minimum on the verbal exam and was nevertheless promoted. The court further concluded that, even if Tyburski had established a prima facie case, he failed to present any evidence that the forty-two percent he received on his verbal exam was pretext for age discrimination. In addition, the court analyzed the evidence as a whole, pursuant to our decision in *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016), and determined that the evidence indicated that Tyburski's failing verbal exam score, not age discrimination, disqualified him from the promotion. The district court also

concluded that Tyburski did not present sufficient evidence allowing a jury to find that he faced a hostile work environment at Central Park, and that he failed to exhaust his claim as pertains to conduct that occurred at Jardine.

Tyburski now appeals.

## II. Discussion

We review a district court's summary judgment ruling de novo. *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although we construe "all facts and make all reasonable inferences in the nonmoving party's favor, the moving party may succeed by showing an absence of evidence to support the non-moving party's claims." *Parkey v. Sample*, 623 F.3d 1163, 1165 (7th Cir. 2010) (internal citation omitted).

### A. Non-Promotion Claim

Tyburski argues that the City denied his application for a promotion to ACOE because of his age. No evidence in the record supports his claim.

"The ADEA protects workers 40 years of age and older from age-based employment discrimination." *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018). To recover under a theory of disparate treatment in the ADEA context, "it's not enough to show that age was *a* motivating factor. The plaintiff must prove that, but for his age, the adverse action would not have occurred." *Id.* (quoting *Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 455 (7th Cir. 2009)). A failure to promote an employee can be an adverse employment action under the ADEA. *See, e.g., Grayson v. City of Chicago*, 317

F.3d 745, 748 (7th Cir. 2003); *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999).

"[T]he singular question that matters in a discrimination case [is]: '[W]hether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'" *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018) (quoting *Ortiz*, 834 F.3d at 765). One method a plaintiff may utilize to present this evidence is the *McDonnell Douglas* framework. *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 367–68 (7th Cir. 2019). "Under this approach, the plaintiff must show evidence that '(1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably.'" *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 719 (7th Cir. 2018) (quoting *Carson v. Lake Cty., Ind.*, 865 F.3d 526, 533 (7th Cir. 2017)). "If the plaintiff meets each element of her prima facie case, 'the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual.'" *Id.* at 719–20 (quoting *Carson*, 865 F.3d at 533).

A plaintiff may put forth and a court may analyze evidence using the *McDonnell Douglas* framework, but neither must do so. *McDaniel*, 940 F.3d at 368. The *McDonnell Douglas* framework "is merely one way of culling the relevant evidence needed to demonstrate whether a reasonable factfinder could conclude that an employer engaged in an adverse

employment action based on the plaintiff's" age or another proscribed factor. *Johnson*, 892 F.3d at 894. "However the plaintiff chooses to proceed, at the summary judgment stage the court must consider all admissible evidence to decide whether a reasonable jury could find that the plaintiff suffered an adverse action *because of* her age." *Skiba*, 884 F.3d at 720 (quoting *Carson*, 865 F.3d at 533). Accordingly, as we announced in *Ortiz*, courts must assess the evidence "as a whole, rather than asking whether any particular piece of evidence proves the case by itself," regardless of whether the court also analyzes the evidence pursuant to *McDonnell Douglas. Ortiz*, 834 F.3d at 765.

Tyburski argues that the district court improperly evaluated his non-promotion claim because it applied two different standards—first, the *McDonnell Douglas* framework and, second, the holistic approach under *Ortiz*—when *Ortiz* outlines the only valid method. Tyburski is correct that there is only one standard regardless of the approach, but this argument lacks merit because, here, the district court properly analyzed the evidence (or lack thereof) supporting Tyburski's non-promotion claim. The district court concluded that "the evidence viewed as a whole indicates that Tyburski's failure on the verbal portion of the Assistant Chief Exam is what disqualified him from promotion" and "even when viewing this evidence cumulatively … no reasonable jury could find that Tyburski's age was the but-for reason that he was not promoted." In other words, the district court did not improperly apply two tests; it evaluated the evidence holistically, as *Ortiz* requires. As long as the court considers the evidence as a whole, it may

also use the *McDonnell Douglas* framework as a supplemental tool.

Tyburski further argues that the court incorrectly applied the *McDonnell Douglas* framework by defining the comparative employee at issue as "a younger employee who was promoted despite scoring less than 60 percent on the oral exam." This argument similarly falls short. The district court identified the appropriate comparator—a younger employee who, like Tyburski, failed the verbal exam but nevertheless received a promotion. Moreover, even if the determination of the comparator were an error, the district court correctly concluded that, assuming Tyburski could establish a prima facie case, his claim still failed because he was unable to demonstrate pretext.

The heart of Tyburski's non-promotion claim is that the City improperly scored his verbal exam and therefore used his failing grade as pretext to deny him the promotion. The City is permitted to set the necessary qualifications for an employment position. *See Schaffner v. Glencoe Park Dist.*, 256 F.3d 616, 621 (7th Cir. 2001) ("What the qualifications for a position are … is a business decision, one courts should not interfere with. We do not tell employers what the requirements for a job must be."). Tyburski did not meet these qualifications: he scored a forty-two percent, well below the sixty percent necessary to obtain a promotion. As long as there was no sham scoring, this dooms his claim.

Naturally, Tyburski attempts to argue that there was, in fact, sham scoring. He points to his score on the question about putting a centrifugal pump into service. He complains that, even though the interviewers permitted him to answer with regards to a turbine powered centrifugal pump, they did

not give him full credit for his answer. The score Tyburski received, however, does not demonstrate discrimination. First, receiving permission to answer a question in a certain way did not guarantee Tyburski full credit if he answered in that way. The interviewers may have assumed, for example, that Tyburski's choice to respond with regards to a turbine powered centrifugal pump meant he was unable to answer the question more broadly, or Tyburski may still have faltered on parts of the answer independent of its turbine-powered focus. Second, even if we credited Tyburski's self-assessment of the adequacy of his answer, receiving full credit on that answer would not have raised his score to passing—he would have received a fifty-four percent, still below the sixty percent threshold. And third, even if it were the case that an adjustment on that answer alone was the difference between a passing and failing grade, Tyburski has not presented any evidence of pretext to explain the grading. To show pretext, a plaintiff "must do more than simply allege that an employer's stated reasons are inaccurate; he must still have some circumstances to support an inference that there was an improper motivation proscribed by law." *Benuzzi v. Bd. of Educ. of the City of Chicago*, 647 F.3d 652, 663 (7th Cir. 2011) (quoting *McGowan v. Deere & Co.*, 581 F.3d 575, 581 (7th Cir. 2009)). Tyburski has pointed to no evidence of improper motivation, other than the interviewers' knowledge of his age relative to that of the other candidates. This is not enough.

On appeal, Tyburski also offers a new argument: that he should have received a higher score on *all* of the questions, not only the one about the centrifugal pump. Tyburski waived this argument. *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("[A] party waives an argument by failing to make it before the district court."). Tyburski

should have tested and developed this novel theory of the facts in the district court; it would have undoubtedly led to greater discovery about the exam and its scoring as a whole. To allow Tyburski to present this argument here would deny the City a sufficient opportunity to respond. *See generally Hernandez v. Cook Cty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011).

Even if Tyburski had not waived this argument, he nevertheless failed to demonstrate improper scoring. The standard rubric interviewers used to evaluate candidates lists bullet points with potential components of the answers for each question. Tyburski argues for the first time on appeal that he should have received a point for each bullet point the interviewer checked off. To be sure, McCarthy testified that the number of bullet points the applicant addressed in his answer was *related to* the ultimate score the applicant received, but the evidence does not suggest that the number of points given for each question corresponds *exactly* to how many of the bullet points the applicant mentions. Indeed, four of the five questions had more than five bullet points, suggesting that the number of bullet points did not directly equate to the score received. In addition, Walsh's explanation of the verbal exam demonstrates that grading was not nearly as rigid as Tyburski suggests. Walsh explained that the interviewers received a rating guide that provides examples illustrating the differences between answers meriting a score of 1, 3, or 5, but interviewers did not "slavishly" adhere to the examples. He further noted that the interviewers are allowed to grant points for any relevant information the candidate provides in answer to a question, and are thus not strictly limited to awarding points for the bullet points on the scoring rubric. Certainly, the fact that two interviewers assigned scores and then

averaged them suggests that there is some element of subjectivity in the process.

Lastly, even if Tyburski could show improper scoring, he does not put forth any evidence that could prove that his age, rather than the quality of his answers, motivated the interviewers to fail him. An error in scoring is not enough to prove discrimination, as long as the employer does not act for "a forbidden reason." *Baron*, 195 F.3d at 341. Similarly, the use of subjective criteria alone does not suffice as evidence of pretext. Tyburski also must point to some "objective evidence indicating that the subjective evaluation is a mask for discrimination." *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 396 (7th Cir. 2010) (quoting *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1170 (7th Cir. 1998)). He failed to do so.

## B. Hostile Work Environment Claims

We have "assumed, but never decided, that plaintiffs may bring hostile environment claims under the ADEA." *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005) (citing *Bennington v. Caterpillar, Inc.*, 275 F.3d 654, 660 (7th Cir. 2001); *Halloway v. Milwaukee Cty.*, 180 F.3d 820, 827 (7th Cir. 1999)). The determination whether a plaintiff can bring such a claim can wait for another day, though. Even assuming a hostile work environment claim is cognizable under the ADEA, Tyburski fails to provide evidence to support such a claim.

### 1. Jardine

To bring an ADEA claim in federal court, a plaintiff must first raise it in a charge before the EEOC. *Ajayi v. Aramark Business Servs., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003); *see* 29 U.S.C. § 626(d)(1). "The primary purpose of the EEOC charge requirement is twofold: it gives the EEOC and the employer a

chance to settle the dispute, and it gives the employer notice of the employee's grievances." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 831 (7th Cir. 2015); *see also Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005).

To determine whether a plaintiff has exhausted his claims, we look to

> whether the allegations are like or reasonably re-
> lated to those contained in the EEOC complaint. If
> they are, then we ask whether the current claim rea-
> sonably could have developed from the EEOC's in-
> vestigation of the charges before it. Claims are rea-
> sonably related if there is a factual relationship be-
> tween them. At a minimum, this means that the
> EEOC charge and the complaint must describe the
> same conduct and implicate the same individuals.

*Ezell*, 400 F.3d at 1046 (internal citations omitted).

Tyburski failed to exhaust his claim as it pertains to Jardine. None of Tyburski's three EEOC charges allege any age-related harassment while he worked at Jardine. Indeed, Tyburski filed all of the charges prior to his transfer to Jardine in September 2015. Nearly all of the conduct Tyburski complains of that allegedly occurred at Jardine—the denial of a chair, the refusal to provide him with training, his assignment to clean filter tables in a cold and polluted room, the absence of his name from time sheets, and the low wall placement of his engineering license—does not overlap with the conduct Tyburski alleged at Central Park. And although his second EEOC charge references one employee who also worked at Jardine—O'Malley—the charge claims only that O'Malley urged Sumner, a Central Park employee, to harass and

intimidate Tyburski. With only information about Central Park, a reasonable EEOC investigation into the charges Tyburski filed before his transfer would not have led to an investigation of conduct alleged to have taken place at Jardine. *See Connor v. Illinois Dep't. of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005) (concluding it was impossible for the EEOC to undertake a preliminary investigation of non-promotion that occurred a month after the EEOC charge was filed). We therefore address only whether Tyburski presented sufficient evidence to demonstrate an issue of fact exists as to whether he faced a hostile work environment at Central Park.

### 2. *Central Park*

For a plaintiff to prevail on a hostile work environment claim, she must show that: "(1) she was subject to unwelcome harassment; (2) the harassment was based on her [age]; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability." *Racicot*, 414 F.3d at 677 (citing *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004)). "A hostile work environment is one that is both objectively and subjectively offensive." *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). "In evaluating the objective offensiveness of a plaintiff's work environment, we consider all of the circumstances, including frequency and severity of the conduct, whether it is humiliating or physically threatening, and whether it unreasonably interferes with an employee's work performance." *Id.* at 677–78 (citing *Luckie v. Ameritech Corp.*, 389 F.3d 708, 714 (7th Cir. 2004)). Even insults specifically referencing age do not necessarily rise to the level of actionable harassment. *See id.* at 678 ("examples of boorish behavior" are

not necessarily "actionable age harassment"). Mere "personal animosity or juvenile behavior" by coworkers is similarly insufficient. *Brown v. Advocate South Suburban Hosp.*, 700 F.3d 1101, 1105 (7th Cir. 2012) (quoting *Shafar v. Kal Kan Foods, Inc.*, 417 F.3d 663, 666 (7th Cir. 2005)).

As a preliminary matter, Tyburski failed to present evidence establishing employer liability, and his hostile work environment claim fails on this basis alone. The Supreme Court has held that an employer "may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim," such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," and when the harassment culminates in such a tangible employment action. *Vance v. Ball State Univ.*, 570 U.S. 421, 431, 424 (2013). In other words, an employer is strictly liable when a supervisor performs a tangible employment action against an employee. *Id.* at 424. Tyburski has not identified any harassment at the hands of supervisors, and therefore cannot prevail on that theory. Indeed, the one supervisor he mentions—ACOE Mecher—only *implied* comments about his age. And in any event, ACOEs are not authorized to hire, fire, demote, or transfer OEAs. Thus, even if Mecher had harassed Tyburski, the City could not be held strictly liable for his behavior.

Alternatively, if the harassing employee is a coworker rather than a supervisor, "the employer is liable only if it was negligent in controlling working conditions." *Id.*; *see also id.* at 448–49 (listing examples where an employer may be negligent in failing to prevent harassment from taking place). Tyburski has failed to put forth any evidence of negligence on the part

of the City. Instead, the evidence shows that, when Tyburski complained about Sumner, the City took prompt action such that Sumner would temporarily refrain from making comments. The City also reassigned Sumner to a subordinate position on days when Tyburski worked so Tyburski would not have to take orders from him.

Tyburski's hostile work environment claim also fails on the merits. Tyburski contends that Worden and Sanderson, two of his subordinates, made age-related comments to him, but he has not demonstrated that an issue of fact exists as to whether these comments were so threatening or pervasive that they could rise to the level of an actionable claim. Indeed, Tyburski testified that he and Sanderson had a good relationship, despite (at most) five age-related comments Sanderson made. And Tyburski alleges that Worden made only three or four age-related comments over a period of as many years. No reasonable jury could determine that harassment was "pervasive" at this frequency. *See, e.g.*, *Racicot*, 414 F.3d at 677–78 (plaintiff failed to demonstrate the harassment she experienced was pervasive where she only "described a limited number of incidents that are more reflective of run of the mill uncouth behavior than an atmosphere permeated with discriminatory ridicule and insult.").

Furthermore, Tyburski has not presented evidence that the alleged harassment was retaliatory. For a superior to have retaliated against an employee based on protected activity, the superior must have had knowledge of that protected activity. *Stephens v. Erickson*, 569 F.3d 779, 788 (7th Cir. 2009); *Treadwell v. Office of Ill. Sec'y. of State*, 455 F.3d 778, 782 (7th Cir. 2006). Tyburski has failed to produce any evidence that his coworkers were aware of his EEOC charges; in fact, the

record shows he did not discuss his charges with his colleagues. We need not assume that his coworkers were notified of these charges without any evidence to support that assumption.

### III. Conclusion

Tyburski failed to present any evidence that age-related discrimination motivated the City's decision not to promote him, and he did not present sufficient evidence for a reasonable jury to conclude that he faced harassment so pervasive and severe that it would rise to the level of a hostile work environment claim. The district court correctly granted summary judgment, and we therefore AFFIRM.