In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-2254

WESLEY GAMBLE,

*Plaintiff-Appellant,*

*v.*

FCA US LLC,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18-cv-4520 — **Virginia M. Kendall**, *Judge.*

SUBMITTED MARCH 2, 2021[*] — DECIDED APRIL 8, 2021

Before RIPPLE, HAMILTON, and KIRSCH, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Wesley Gamble was fired by Fiat
Chrysler Automobiles (FCA) in October 2017 for violating
FCA's anti-harassment policy for a second time. Asserting

---

[*] We have agreed to decide this case without oral argument because the
facts and legal arguments are adequately presented in the briefs and rec-
ord, and the decisional process would not be significantly aided by oral
argument. *See* FED. R. APP. P. 34(a)(2)(C).

that he was treated unfairly during FCA's investigation, and ultimately fired, due to his race (he is African American), age (he was 63), and disability (he had battled lymph node cancer), Gamble sued FCA for employment discrimination. The district court entered summary judgment for FCA. Gamble appeals the judgment only with respect to his race discrimination claim. Because no reasonable jury could infer that Gamble was treated less favorably than a similarly situated employee outside of his protected class, we affirm the judgment of the district court.

**I**

Gamble began working at FCA's Belvidere, Illinois, assembly plant in July 2015. During onboarding (and again later in his employment), he received a copy of FCA's anti-discrimination and harassment policy, titled Policy 3-6. Policy 3-6 provided that where allegations arose related to sexual harassment, an internal investigation could be conducted and, based on the findings of that investigation, the company could take appropriate disciplinary action, including termination.

In October 2015, two female employees complained that Gamble had sexually harassed them by making inappropriate comments toward them. After interviewing several witnesses, Kelly Pollard, a human resources manager, concluded that Gamble had violated FCA's anti-harassment policy and issued him a written warning. He acknowledged the warning and attended remedial training, though he disputed the harassing nature of his comments.

In August 2017, Gamble's supervisor reported that he had witnessed Gamble acting inappropriately toward a female

who reported to Gamble. Pollard initiated another investigation and interviewed Gamble's supervisor (the witness), the alleged victim of the conduct, and two other women who worked with Gamble and the alleged victim. The alleged victim corroborated the supervisor's story. Separately, one of the other women also complained during her interview that Gamble had acted inappropriately toward her as well. For his part, Gamble suggested that Pollard interview certain other employees and claimed that he was the target of a conspiracy by his coworkers, who wanted to get him fired. A different human resources employee interviewed one of the five individuals that Gamble suggested be interviewed.

On October 11, 2017, Gamble was called into a meeting with his supervisor and Pollard. Pollard informed Gamble that he was being terminated because of a second violation of Policy 3-6.

Nine months later, Gamble filed this lawsuit, asserting that FCA discharged him based on his race, age, and disability in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; 42 U.S.C. § 1981; Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112; and the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C.A. §§ 621–34.[1] Later, he filed a second lawsuit against

---

[1] As noted, Gamble only appeals the district court's grant of summary judgment on his race discrimination claim related to the investigation and termination for the violations of Policy 3-6. As relevant to his other claims, since abandoned, Gamble received a negative performance review in late 2016 (for which he completed a performance improvement plan) and battled lymph node cancer in 2017, which caused some lingering effects when he ultimately returned to work.

several FCA employees, including Pollard, asserting that they had conspired to get him fired.

FCA eventually moved for summary judgment in this suit, contending that Gamble could neither make a prima facie case of race, age, or disability discrimination, nor prove that the reason for his termination was a pretext. Gamble opposed summary judgment only on the Title VII race discrimination claim (expressly abandoning the other claims).

While that motion was pending, FCA moved to reassign Gamble's second suit under Local Rule 40.4 of the Northern District of Illinois. This rule permits reassignment of a later-filed civil case before one district judge if it concerns the same property, issues of fact or law, or transaction or occurrence as a case already before another judge. If none of these conditions is met, the court may still reassign a case if doing so would conserve judicial resources, would not substantially delay the earlier case, and if the cases may be disposed of in a single proceeding. Noting the overlap between the two complaints, Judge Kendall granted the motion to reassign the second case to her because they concerned the same events. Gamble voluntarily dismissed the second lawsuit—which had not been consolidated with the first—two months later. Notice of Voluntary Dismissal at 1, *Gamble v. Smithson*, No. 19-cv-06196 (N.D. Ill. Feb. 19, 2020).

In March 2020, the district court entered summary judgment in favor of FCA on all claims. Gamble had abandoned his claims under the ADEA and ADA, it observed, and his claim for race discrimination under § 1981 was time-barred by a provision in his employment contract.

As for the Title VII race discrimination claim, the court acknowledged that Gamble was a member of a protected class, was meeting his employer's legitimate expectations, and suffered an adverse employment action when he was fired. But he lacked any evidence that FCA treated similarly situated, non-African American employees more favorably. Though Gamble contended that "multiple non-black salaried employees" had been accused of violating the anti-harassment policy but were not discharged, the court determined that, under Federal Rule of Civil Procedure 32(a)(8), it could not consider one deposition transcript he cited as support. FED. R. CIV. P. 56(c)(1)(A). His only other proposed comparator was a white employee whom the court did not consider suitable because no evidence showed that he was found to be a repeat offender like Gamble. Further, there was no evidence FCA had given a pretextual reason for firing him. Therefore, the court concluded that no reasonable jury could find that FCA had discriminated against Gamble based on race. It also denied his motion for reconsideration, and he now appeals.

**II**

On appeal, Gamble argues that he presented sufficient evidence of discrimination to defeat summary judgment on his Title VII claim. We review the district court's ruling de novo. *Tyburski v. City of Chicago,* 964 F.3d 590, 597 (7th Cir. 2020). He also contends that the reassignment of his second lawsuit was improper. If that issue is properly before us (which FCA contests), we would review the decision for abuse of discretion. *See Pettitt v. Boeing Co.,* 606 F.3d 340, 344 n.5 (7th Cir. 2010) (referring to ruling on "Rule 40.4 motion" as "discretionary").

## A

Gamble has chosen to proceed under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which is one of the ways to prove Title VII employment discrimination. *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021). That approach "requires a plaintiff to make a prima facie case of discrimination, at which point the burden shifts to the employer to offer a nondiscriminatory motive, and if the employer does so, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext." *Id.* (internal quotation omitted). To make a prima facie case, Gamble must show: "(1) he belongs to a protected class; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) another similarly situated employee outside of his protected class received better treatment from his employer." *Id*. The parties have agreed that Gamble is a member of a protected class, that he was meeting FCA's employment expectations, and that he suffered an adverse employment action.[2] The analysis of Gamble's claim thus centers on whether he has provided evidence that he was treated less favorably than

---

[2] On this last point, Gamble offers a somewhat muddled picture as to what "adverse employment action" he challenges. Specifically, much of his briefing deals with what he asserts was a racially-biased investigation into his conduct, though he does not argue that the investigation itself was an adverse employment action. It appears that Gamble argues that any racial bias in the investigation would be evidence of discrimination as to his termination, which undoubtedly constitutes an adverse employment action. *See Levy v. Wilkie*, No. 20-1877, 2021 WL 56708, at *4 (7th Cir. Jan. 7, 2021).

a similarly-situated FCA employee outside of his protected class. The district court held that Gamble failed to do so.

On appeal, Gamble argues that the district court's ruling was predicated on the erroneous exclusion of the deposition testimony of William Findlay, FCA's human resources director, taken in *Liner v. FCA*, a later, unrelated employment discrimination case. No. 18-cv-06163 (N.D. Ill. filed Sept. 10, 2018). Gamble also argues that the district court improperly weighed the evidence and failed to draw inferences in his favor. The district court correctly concluded that Gamble had failed to present a prima facie case.

We first deal with Gamble's argument that the district court improperly excluded Findlay's deposition testimony. Gamble asserts that Findlay testified in a different case that Policy 3-6 requires witness statements to be signed. From that testimony, Gamble argues that he was treated less favorably than non-minority employees because the witness statements in his investigation were not signed. It is undisputed that the witness statements in the investigation that led to Gamble's termination were not signed, but Gamble's description of Findlay's testimony is not quite accurate. In his deposition testimony, Findlay describes in abstract terms what "may" occur during an internal investigation and includes one line stating that witnesses would sign their statements. Gamble further asserts that Pollard lied when she testified that she reviewed signed statements. Without explanation, Gamble boldly concludes that Pollard's alleged lie is evidence that he was treated differently due to his race, but entirely fails to show how Pollard's testimony (or, for that matter, the purported signature requirement) had anything to do with race.

The district court held that it could not consider the
Findlay deposition because the subject matter and the parties
were not the same in the two cases and because Gamble had
not offered an alternative basis for the admissibility of the tes-
timony, citing to FED. R. CIV. P. 32(a)(8). Rule 32(a)(8) permits
previous deposition testimony to be used at the summary
judgment stage of a later action if (1) the later action involved
the same subject matter between the same parties, or their
representatives or successors in interest, *or* (2) as allowed by
the Federal Rules of Evidence. FED. R. CIV. P. 32(a)(8). As we
have explained, where the litigation does not involve the
same parties and subject matter, deposition testimony can be
admitted at summary judgment if (1) the deposition satisfies
Rule 56's affidavit requirements and (2) the deposition has
been made part of the record in the case before the court. *Al-
exander v. Casino Queen, Inc.*, 739 F.3d 972, 978 (7th Cir. 2014);
*see also* 8A C. Wright, A. Miller, & R. Marcus, *Federal Practice
& Procedure* § 2142 & n.19, at 634 (2010) (for summary judg-
ment practice: "A deposition is at least as good as an affidavit
and should be usable whenever an affidavit would be permis-
sible, even though the conditions of the rule [32(a)(8)] on use
of a deposition at trial are not satisfied."). But, even if the dis-
trict court had considered the deposition testimony consistent
with *Alexander*, Gamble's argument fails nonetheless.

Gamble boldly asserts on appeal that Findlay's deposition
testimony unequivocally showed that Policy 3-6 required wit-
ness statements to be signed. It does not do that, and, further-
more, it does not address the issue of whether Gamble was
treated differently in the course of the investigation because
of his race. Instead, the omitted testimony discusses general
procedures that "may" happen in the course of an investiga-
tion. The bareboned, non-specific testimony regarding a

possible signature requirement offers no basis to draw an in-
ference of racial bias against Gamble, contrary to his conclu-
sory assertions. As such, even if the district court had consid-
ered this testimony, it does nothing to change the calculus of
whether Gamble made out a prima facie case of race discrim-
ination.

Next, Gamble cited to one alleged comparator in his at-
tempt to make out his prima facie case. But Gamble failed to
identify someone who was subject to the same performance
standards and engaged in misconduct of "comparable seri-
ousness." *de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 559 (7th
Cir. 2019). As the district court explained, the one comparator
in the record (for whom Gamble supplied relevant evidence)
was not similarly situated: Although FCA did not discharge a
white employee who had violated the same anti-harassment
policy as Gamble, the record did not show that this employee
had violated the policy twice, as Gamble had. *See Abrego v.
Wilkie*, 907 F.3d 1004, 1013–14 (7th Cir. 2018). Gamble was not
discharged after his first violation, so the distinction mattered.
Further, there was no evidence about whether the proposed
comparator had harassed multiple victims in front of eyewit-
nesses. On appeal, Gamble does not dispute the distinctions
the court focused on or argue that they are unimportant.

Lastly, Gamble makes a brief argument that the district
court improperly supplanted the jury's role by weighing evi-
dence. Gamble, however, mischaracterizes the district court's
handling of the evidence proffered. Specifically, Gamble ar-
gues that the district court "admitted" that it was weighing
evidence related to how unsigned witness statements should
be viewed in the record. As noted above, Gamble argued that
this was evidence of his being subjected to a different

investigatory standard than other FCA employees. The judge, in considering whether these statements were admissible for purposes of summary judgment, stated that Gamble's objection to the witness and victim statements taken during FCA's investigations into his conduct did not undermine their admissibility; rather this omission was relevant "to the weight of the evidence." The court was simply explaining why it allowed the statements into the summary judgment record (which may contain only material "admissible in evidence," *see* FED. R. CIV. P. 56(2)). This is not an "admission" by the district court that it was weighing the evidence itself. Furthermore, it is clear from the district court's order that it did not weigh evidence but rather determined what evidence could properly be considered on summary judgment and then drew conclusions based on the record.

Gamble failed to present sufficient evidence to make a prima facie claim of race discrimination. Because he did not make a prima facie case, we need not address whether FCA's stated reason for his termination was pretext for discrimination.

**B**

Finally, Gamble argues that the district judge erred in granting the motion under Local Rule 40.4 to have his second lawsuit reassigned. Citing only the minute entry granting the motion, Gamble faults the judge for providing no reasoning and not applying all the requirements for reassignment in the rule. He also complains that the judge ruled on the motion in the absence of Gamble's counsel (who was in another

courtroom when the case was called) and cites that as evidence of animus toward the attorney.

The hearing transcript demonstrates that the district court did give reasons, albeit briefly, for accepting the reassignment. But it does not matter either way, because the argument about reassignment is not properly before us. Gamble voluntarily dismissed the reassigned case after the defendants moved for sanctions under Federal Rule of Civil Procedure 11. Notice of Voluntary Dismissal at 1, *Gamble v. Smithson*, No. 19-cv-06196 (N.D. Ill. Feb. 19, 2020). Gamble is not aggrieved by his own voluntary action, and there is no possible relief we could give him now that the case is dismissed. *See United States v. Procter & Gamble Co.*, 356 U.S. 677, 680 (1958); *Geaney v. Carlson*, 776 F.2d 140, 141–42 (7th Cir. 1985) (voluntarily dismissed case not appealable because it is not an involuntary adverse judgment). Therefore, we do not consider the argument.

AFFIRMED