In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-3021

SISAWAT SINGMUONGTHONG,

*Plaintiff-Appellant,*

*v.*

EDWIN R. BOWEN and JOHN BALDWIN,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 4:18-cv-04196-SLD-JEH — **Sara Darrow,** *Chief Judge.*

SUBMITTED NOVEMBER 1, 2022 — DECIDED AUGUST 8, 2023

Before ROVNER, BRENNAN, and SCUDDER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Sisawat Singmuongthong was employed by the Illinois Department of Corrections (the "Department") as a correctional officer from 1998 through 2016, and an assistant warden from 2016 until his termination in 2018. He filed suit under 42 U.S.C. § 1983 alleging, among other claims, that the defendants, Edwin Bowen and John Baldwin, had discriminated against him based on his race,

color, and national origin, and retaliated against him for complaining about discrimination, in violation of his rights under 42 U.S.C. § 1981. Bowen was the Department's chief of staff and Baldwin was the Department's acting director during the time of the alleged discrimination.

The plaintiff describes himself as a tan-colored, Asian man of Laotian national origin. He worked as a correctional officer at the Sheridan Correctional Center from 1998 through 2013, at which time he became a lieutenant at Sheridan. In December 2016, the plaintiff was promoted to the position of assistant warden of operations at a new Department facility, Kewanee Life Skills Re-Entry Center. He received a five percent increase in his salary in conjunction with that promotion. The warden at that facility, Anthony Williams, was investigated in early 2018 for inappropriate conduct of a sexual nature with subordinate staff, and was terminated. That investigation also concluded that the plaintiff had difficulty making good administrative decisions, and specifically that he had failed to report inappropriate conduct of a sexual nature, and that he spent too much time at bars with subordinate staff. Upon Williams's termination, the plaintiff informed the regional deputy chief, Sandy Funk, that he was interested in the warden position. He was not chosen for the position, however, because of his relationship with Williams and the concerns about his judgment that surfaced in the Williams investigation. Following a subsequent investigation of a separate allegation of sexual harassment, the plaintiff was terminated from employment.

He alleged discrimination in a purportedly disparate pay raise given to him upon his promotion to assistant warden, in

the failure to promote him to a warden position when it became available, and in his ultimate termination from his employment with the Department. The district court granted summary judgment to the defendants as to all of those challenges. On appeal, he has abandoned his claims as to the termination from his position as well as his retaliation claim, appealing only the grant of summary judgment as to the pay disparity and failure to promote claims.

We review the grant of summary judgment by a district court *de novo*, affirming if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022). Section 1981 protects the right of citizens regardless of race in the context of employment to have the same right to enforce and make contracts. *Comcast Corp v. National Assoc. of African American-Owned Media*, __ U.S. __, 140 S. Ct. 1009, 1015 (2020). In order to succeed on a § 1981 claim, as opposed to a claim under Title VII, a plaintiff has the burden of showing that race was a but-for cause of the injury. *Id*. at 1014; *Lewis*, 36 F.4th at 759. In assessing whether the evidence would permit a reasonable factfinder to conclude that race caused the adverse employment action, courts must evaluate all evidence as a whole, regardless of whether such evidence is characterized as direct or circumstantial. *Igasaki v. Ill. Dept. of Fin. & Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021); *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 766 (7th Cir. 2016).

One means for a plaintiff to prove employment discrimination is through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), under which a plaintiff must show evidence that he is a member of a pro-

tected class, who was meeting the defendant's legitimate expectations, that he suffered an adverse employment action, and that similarly situated employees who were not members of his protected class were treated more favorably. *Tyburski v. City of Chicago*, 964 F.3d 590, 598 (7th Cir. 2020). Once those elements are met, the burden shifts to the defendant to set forth a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. If the defendant does so, then the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual. *Id*. Although the *McDonnell-Douglas* test is one means of proving discrimination, it is not the only means of doing so. In all cases, at the summary judgment stage, courts consider all evidence and determine whether a reasonable jury could find that the plaintiff suffered an adverse action because of his protected characteristics. *Id*.

We turn first to Singmuongthong's discrimination claim alleging disparate pay. The plaintiff worked as a correctional officer for many years, during which time he was a union employee and therefore his pay was set by union contract. As a result of his promotion to assistant warden in December 2016, he was no longer under the union pay structure. In conjunction with that promotion he received a five percent increase in his salary. He argues that Baldwin and Bowen discriminated against him on the basis of race, color, and/or national origin by paying him a lower salary than other non-Asian, tan or Laotian employees. The district court granted summary judgment in favor of the defendants, holding that the plaintiff had failed to demonstrate that the reason offered for giving him only the five percent raise was pretextual, and that no reasonable jury could conclude that the plaintiff was paid less than other employees due to his race, color or national origin.

The plaintiff argues on appeal that under the *McDonnell-Douglas* framework, the evidence was sufficient to establish an issue of fact as to whether he received disparate pay based on a discriminatory basis. When the plaintiff was promoted to the position of assistant warden, he received a pay raise that increased his prior salary by five percent. He argues that other similarly-situated employees were treated more favorably, in that they received higher salaries, identifying four individuals. As the district court recognized, "[b]ecause the prima facie and pretext inquiry often overlap, if a defendant offers a nondiscriminatory reason for its actions, we can proceed directly to the pretext inquiry." *Barnes v. Bd. of Trustees of Univ. of Ill.*, 946 F.3d 384, 389 (7th Cir. 2020).

Here, Bowen testified in his deposition that salaries for such promotions varied in amount because they were calculated based on the salary in the prior position, but that the standard raise was an increase of five percent from that prior salary. Bowen testified that he was responsible for implementing the mathematical equation that determined the salary, and that such promotions were based on a standard increase of five percent. He identified situations in which the salary would deviate from that standard five percent. When an employee was coming from a position outside the agency or the pay was low, a more substantial raise might be provided. Moreover, for senior administrators who were near the top of the pay range allowed for the new position, the raise might be less than five percent. He testified that when he was chief of staff, the cap for salaries was around $125,000, and the floor for such salaries was around $45,000, and that those limits were based on guidelines issued by Illinois' Central Management Services. He further testified that the establishment of the standard salary increase of five percent was based on

budgetary constraints and direction from the Governor's office in regard to pay increases.

Although the plaintiff argues on appeal that the evidence did not support the contention that there was a standard raise of five percent for such promotions, he raised no such argument below. In fact, in his response to the motion for summary judgment below, the plaintiff explicitly set forth as "Additional Material Facts" for consideration that "[a] Senior Public Services Administrator pay could be set anywhere in the range of $45,000 to $125,000" and that "[p]romotions to Senior Public Administrator pay, which are Assistant Wardens and above, were based on a pretty much standard increase of 5%." Doc. 44 at 25–26. He cannot disavow those facts now.

The plaintiff thus did not rebut that testimony that the five percent raise was the standard salary raise provided, nor does the plaintiff dispute that the raise provided to him was a five percent increase over his prior salary. He merely identifies comparators that received raises that deviated from the five percent, and argues that the deviation in their salaries is sufficient to demonstrate that his salary calculation was discriminatory. That argument is insufficient to allow an inference of discriminatory conduct. The *McDonnell-Douglas* framework supports an inference of discrimination where similarly-situated individuals of a different protected characteristic are treated differently, and the employer's alleged reason for the differential treatment is pretextual. Here, the comparators set forth by the plaintiff do not advance his claim. First, he identifies only a few non-Asian employees who received a pay raise of more than five percent, but does not contest that he was the only Asian assistant warden or warden during the

relevant time period and that the standard raise of five per-
cent was applied in the normal course to the numerous other
non-Asian assistant wardens and wardens. The undisputed
evidence, then, remained that the same pay determination
was applied to similarly-situated non-Asian employees as a
matter of standard practice. Therefore, he lacks evidence that
the distinction in pay for those few comparators is related to
the race of the recipient.

Moreover, his four comparators are factually dissimilar.
For instance, two of them, Jennifer Parrack and Darwin Wil-
liams (referred to as "Darwin" to differentiate from the war-
den Anthony Williams), fell within the exceptions to the five
percent policy identified by Bowen in setting forth the pay
policies. Parrack worked for a contractor prior to becoming
assistant warden, and therefore came to the position from out-
side the agency and her pay was calculated differently from
those in the internal pay structure. And Darwin was making
$35,000–36,000 salary when promoted, and therefore would
have been under the lowest range of $45,000 if limited to a five
percent range. Those comparators therefore fell within the
pay structure identified by Bowen and not challenged by the
plaintiff, and did not reflect a deviation from it.

Two other persons identified by Singmuongthong, Daniel
Sullivan and John Burle, were not proper comparators. As to
Sullivan, the plaintiff never presented any evidence as to his
race, and therefore he was not identified as a non-Asian for
comparison. Burle was placed in the role of assistant warden
in an "acting" capacity and therefore retained his position in
the union bargaining unit and received a supplemental pay
increase in addition to that union salary. The plaintiff
acknowledged in his deposition that he was aware that the

assistant warden promotion was not in an "acting" capacity and that it would take him out of the union, and therefore the two were not similarly-situated because different pay structures applied to them. The plaintiff failed to identify similarly-situated non-Asians treated differently, but more significantly, has conceded that the standard practice was to provide a five percent raise and that the others who also received such a raise were all non-Asians. The failure to deviate from the standard practice applied to Asians and non-Asians alike cannot supply a basis for a jury to find that the raise was based on race.

The final claim raised by the plaintiff on appeal is a claim that the failure to promote him to the position of warden was discriminatory. For such a claim, the focus on summary judgment is "'whether the evidence would permit a reasonable fact-finder to conclude that [the plaintiff] was subjected to an adverse employment action based on a statutorily prohibited factor—here, race.'" *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021), quoting *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 788 (7th Cir. 2019); see also *Smiley v. Columbia College Chicago*, 714 F.3d 998, 1002 (7th Cir. 2013) (noting that "[w]e generally apply the same standards to Title VII and section 1981 race discrimination claims at the summary judgment stage").

As always on summary judgment, we consider all evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in favor of that party. *Logan*, 4 F.4th at 536. As we have repeatedly noted, whether a plaintiff relies upon circumstantial or direct evidence of discrimination, "all evidence belongs in a single pile and must be evaluated as a whole." *Id*. (internal quotation marks omitted). The

plaintiff argues that he was qualified for the promotion, that he followed the proper procedures to request the promotion, and that the standard procedure was to promote assistant wardens to warden as evidenced by five persons who received such promotions.

The five comparators identified by the plaintiff provide evidence that a number of assistant wardens received promotions to the position of warden. But they do not establish the fact for which the plaintiff presents them—which is that it is the "standard practice" to promote the assistant warden to the warden position, and that the failure to promote the plaintiff was therefore a deviation from that standard practice that would allow an inference of discrimination. More significantly, none of those five persons are proper comparators at all, because the plaintiff does not assert that any of those persons had been found to have been implicated in misconduct.

Here, the defendants sought to fill the position of warden that was vacated when the warden was terminated following an investigation. That investigation revealed that the warden committed misconduct, and the same investigation also caused the employer to conclude that the plaintiff had poor judgment. Bowen testified that the investigation revealed that the plaintiff failed to report inappropriate conduct of a sexual nature and spent too much time at bars with subordinate staff. The plaintiff does not contest on appeal that those conclusions were reached following the investigation into the warden. Because the plaintiff has not argued that any of the assistant warden comparators had been implicated in misconduct prior to their promotion to the warden position, the plaintiff has not identified similarly-situated individuals treated dif-

ferently. In fact, the other assistant warden at Kewanee, Jennifer Parrack, a Caucasian, was also not considered for the warden position because the Williams investigation had led to concerns with her judgment as well.

In response, the plaintiff argues only that even after the information from that investigation was known to the employer, the employer appointed him as acting warden, and therefore the employer's reliance on the investigation to deny the promotion was pretextual. That argument is without support. First, as the plaintiff concedes, he was not in fact appointed to a position of acting warden. Instead, as the assistant warden, he was asked to take over the job responsibilities of the warden while a replacement warden was sought. Nothing in that practical allocation of job duties during an interim period implies that the investigation results were therefore not relevant to the employer in determining who would be promoted to the position of warden. The evidence is insufficient to support a finding of pretext.

The plaintiff's remaining argument is also meritless. He argues that the defendants claimed in the alternative that Baldwin and Bowen were unaware of his interest in the position, and that their claim was inconsistent with the argument that he was not promoted to the position based on the conclusion from the investigation that he exercised poor judgment. But he has failed to demonstrate that those two arguments are factually inconsistent. The undisputed testimony from Bowen was that the Department regularly identified candidates for open positions and proactively reached out to them to offer the position. Doc. 42-3 at 21–23. Therefore, an employee's expression of interest in a position was not a necessary trigger for them to be considered for the position. Accordingly, there

is no inconsistency. Because the Department self-identified candidates, they could have refused to offer him the promotion based on his poor judgment without ever discovering whether he would even be interested in the position. Because the statements are not inherently inconsistent, the plaintiff cannot succeed on his argument that the inconsistency renders the explanation pretextual.

The decision of the district court is AFFIRMED.