In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 23-1531

TONDALAYA GAMBLE, M.D.,

*Plaintiff-Appellant*,

*v.*

COUNTY OF COOK, *et al.*,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cv-04297 — **Mary M. Rowland**, *Judge*.

———————————

ARGUED JANUARY 24, 2024 — DECIDED JULY 2, 2024

———————————

Before WOOD,[1] SCUDDER, and LEE, *Circuit Judges*.

LEE, *Circuit Judge*. Tondalaya Gamble, a Black physician, worked at Cook County Health's John Stroger Hospital for roughly eleven years. Gamble has sued Cook County, as well as her former department and division chairs, Edward Linn

_____

[1] Circuit Judge Diane P. Wood retired effective May 1, 2024, and did not participate in the decision of this opinion, which is being resolved by a quorum of the panel under 28 U.S.C. § 46(d).

and Fidel Abrego, for race discrimination. Gamble alleges that Cook County violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Illinois Human Rights Act, 775 Ill. Comp. Stat. 5/1-101 *et seq.* (IHRA). She contends that Linn and Abrego violated 42 U.S.C. §§ 1981 and 1983. The district court granted summary judgment after concluding that no reasonable jury could find in Gamble's favor as to any of her claims. We agree and affirm the judgment.

## I.    Background

Following a three-year medical fellowship in urogynecology, Gamble accepted a position at Stroger Hospital in 2009. Gamble joined the Obstetrics and Gynecology (OB/GYN) department. The department had five divisions, including general OB/GYN. Linn served as the Chair of the department and oversaw each division. Abrego chaired the general OB/GYN division and reported to Linn. Physicians within the OB/GYN department were classified as either generalists responsible for providing general OB/GYN services, or subspecialists charged with specialized OB/GYN care.

Linn hired Gamble as a generalist, with the expectation that she would have responsibilities in both the specialized urogynecology clinic and the general OB/GYN clinic. At the time of her hire, Gamble was asked to take on-call shifts usually staffed by general obstetricians as part of her duties. Linn told Gamble she would only need to cover those shifts until they hired more generalists—likely for roughly twelve to eighteen months. But ultimately Gamble was required to perform general obstetric duties for the entirety of her decade-long tenure at Stroger.

The conditions of Gamble's employment, including the salary scale and yearly pay increases, were governed by a collective bargaining agreement (CBA) between Cook County and Services Employees International Union, Doctors Council. As part of Stroger's compensation framework, employees were assigned a numeric grade level based on several factors, including qualifications and experience. Gamble was hired as an attending physician, grade level ten. The CBA provided for annual pay increases—referred to as step increases and denoted internally with a numeric value.

Over the course of Gamble's employment, she dealt with large patient loads and at various times requested additional support. Many of Gamble's requests went unanswered. After a little over a decade at Stroger, Gamble resigned in 2020 and later filed this suit.

## II.      Analysis

Gamble asserts that Linn, Abrego, and Cook County discriminated against her based on her race. According to Gamble, the district court erred in granting summary judgment in their favor because she had presented evidence that she was paid less than similarly situated non-Black physicians.

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether there is a genuine dispute of material fact, we view the evidence and draw all reasonable inferences in Gamble's favor. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). Our review is *de novo*. *REXA, Inc. v. Chester*, 42 F.4th 652, 661–62 (7th Cir. 2022).

Title VII prohibits employers from discriminating against a person with respect to her "compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Under Section 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right … to the full and equal benefit of all laws … as is enjoyed by white citizens[.]" 42 U.S.C. § 1981. Finally, the IHRA makes it a civil rights violation for any employer to discriminate against an employee, and Section 1983 empowers employees to sue individuals who are personally responsible for the deprivation of a constitutional right. 775 Ill. Comp. Stat. 5/1-101 *et seq.*; 42 U.S.C. § 1983; *see Trigg v. Fort Wayne Cmty. Schs.*, 766 F.2d 299, 300–01 (7th Cir. 1985). The same legal standard applies to claims of racial discrimination under Title VII, Sections 1981 and 1983, and the IHRA. *See Mahran v. Advoc. Christ Med. Ctr.*, 12 F.4th 708, 714 (7th Cir. 2021); *Barnes v. Bd. of Trs. of Univ. of Ill.*, 946 F.3d 384, 389 (7th Cir. 2020).

Gamble had two paths to survive summary judgment. She either needed to establish a dispute of material fact under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or more generally present enough evidence from which a reasonable jury could find that Defendants discriminated against her because she's Black. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 766 (7th Cir. 2016) (stating that, when evaluating race discrimination claims, "all evidence belongs in a single pile and must be evaluated as a whole"). Gamble pursues both avenues.

We begin with Gamble's efforts to establish a *prima facie* case under *McDonnell Douglas*.[2] To demonstrate a *prima facie* case of disparate pay, Gamble must show that: (1) she is a member of a protected group; (2) she was fulfilling her employer's legitimate performance expectations; and (3) she suffered an adverse employment action in that she was paid a lower salary than a "similarly situated" nonprotected class member. *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 274 (7th Cir. 2004).

Neither party disputes that Gamble satisfies the first and second prongs. As a Black woman, Gamble belongs to a protected class, and Defendants acknowledge that she met Stroger's legitimate expectations. But ultimately, no reasonable jury could find from this record that Gamble was similarly situated to her chosen comparators. "To prevail by showing a similarly situated employee was treated differently, a plaintiff must show the purported comparator was 'directly comparable to her in all material respects' so as to 'eliminate other possible explanatory variables.'" *Downing v. Abbott Lab'ys*, 48 F.4th 793, 805 (7th Cir. 2022) (quoting *Williams v. Off. of Chief Judge of Cook Cnty.*, 839 F.3d 617, 626 (7th Cir. 2016)). In deciding whether two employees are directly comparable, courts look at a host of relevant factors, including whether the employees "(i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same

---

[2] Under the *McDonnell Douglas* framework, if a plaintiff can establish a *prima facie* case, the burden shifts to the employer to show a legitimate, nondiscriminatory reason for the adverse employment action. If a defendant offers a legitimate reason, the burden reverts to the plaintiff to demonstrate that the proffered reason was pretextual. *Singmuongthong v. Bowen*, 77 F.4th 503, 507–08 (7th Cir. 2023).

supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision." *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003).

Gamble identifies two white physicians as potential comparators—Bruce Rosenzweig and Karen Fish. At the time of Gamble's hire, Rosenzweig staffed the urogynecology clinic. Rosenzweig was a part-time employee and worked half the hours of full-time employees, including Gamble. Both physicians staffed the urogynecology clinic for roughly a year, after which Cook County Health eliminated Rosenzweig's role, and he was let go. As for Fish, Stroger hired her as a general obstetrician within the OB/GYN department a short time before Gamble. Based on Fish's experience—mainly in laparoscopic surgery—she was hired as an attending physician, grade level eleven.

According to Gamble, she and Rosenzweig were similarly situated because they were both trained urogynecologists, they both worked in the OB/GYN department, they reported to the same department chair, and they both treated Stroger's urogynecology patients in the clinic and operating room. Despite their similarities, Gamble maintains that she was paid less, which allows a jury to infer nefarious racial discrimination.

The comparison, however, is not so straightforward because Gamble worked full-time, while Rosenzweig worked part-time. Gamble attempts to bridge this gap by extrapolating from Rosenzweig's biweekly salary of $8,480 for part-time work to arrive at an annualized salary of $440,960 (assuming a full-time schedule). She then points out that, during the period when she and Rosenzweig overlapped, her annual salary

was around $235,250. For their part, Defendants contend that Rosenzweig cannot serve as a suitable comparator for the simple reason that he was a part-time employee, while Gamble was not.

We have observed that full-time and part-time employees often lack sufficient similarities to serve as adequate comparators. *See Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1155 (7th Cir. 1997). This is because, in addition to working fewer hours, part-time employees typically receive less pay and different benefits than their full-time counterparts. But it is important to note that the part-time versus full-time distinction is not dispositive in and of itself. Instead, to determine whether employees (full-time and part-time) are similarly situated, we use a "flexible, common-sense, and factual" approach. *Coleman v. Donohoe*, 667 F.3d 835, 841 (7th Cir. 2012). And only where a part-time employee and a full-time employee differ solely in hours worked and are materially similar in all other respects can they serve as relevant comparators. *See, e.g., Johnson v. Statewide Investigative Servs., Inc.*, No. 22-2820, 2023 WL 8643636, at *3 (7th Cir. Dec. 14, 2023). Thus, when comparing a part-time worker to a full-time worker, we examine whether differences other than their assigned hours come along with that status.

Here, we agree with the district court that Gamble and Rosenzweig are not similarly situated—but not only because they worked a different number of weekly hours. At the time Gamble was hired, Rosenzweig had been practicing in urogynecology for many years. Rosenzweig held a different title than Gamble, and they performed different duties. He worked as a urogynecology subspecialist, while she was hired as a generalist. Gamble had to take on-call shifts in the general

OB/GYN clinic; Rosenzweig worked exclusively in the uro-gynecology clinic. It is true that Gamble performed subspecialty duties (in addition to her generalist responsibilities) and that she wished to be reclassified as a subspecialist. But she herself says her title and position never changed. Furthermore, given that they were both salaried employees, Gamble does not explain why simply doubling Rosenzweig's salary based on hours worked provides the correct point of comparison. (Indeed, there could be many reasons why a hospital might have to pay a physician who works half-time more than half of a full-time physician's salary, the lack of full-time benefits being one.) Finally, there is no evidence in the record that the CBA governing Gamble's employment also applied to Rosenzweig. These differences make Rosenzweig an inapt comparator for Gamble's discrimination claim.

The district court's determination that Gamble and Fish are not similarly situated also finds support in the record. Although Fish and Gamble both worked in the OB/GYN department, they had different levels of experience and were hired to perform different duties. Fish had extensive experience in minimally invasive surgeries and was hired specifically to fill a departmental deficiency in laparoscopic surgeries. By contrast, at the time of her hire, Gamble had recently finished her urogynecology fellowship.

Glossing over these differences, Gamble focuses on various points in time when Fish earned more than she did. For example, Gamble says that Stroger hired her at an annual salary of $235,250.08 while paying Fish $243,996.48 per year. But Gamble does not account for the impact the CBA had on their compensation levels. The labor agreement, which applied to both Gamble and Fish, dictated the pay scale as well as any

annual pay increases, which were based on a person's grade level and step assignment. Higher grade levels corresponded to higher salaries. Here, Gamble was hired as an attending physician at grade level ten, while Fish was hired at grade level eleven (likely because of her greater experience). Thus, Gamble cannot rely on Fish as a suitable comparator.

In addition to the burden-shifting framework of *McDonnell Douglas*, Gamble also invokes the totality approach articulated in *Ortiz*, pointing to other ways in which she was treated less favorably than her non-Black counterparts. For example, she argues, Rosenzweig never had to assist in the general obstetrics and gynecology clinic while Gamble did. Similarly, she says, Fish did not have to practice in the urogynecology clinic and cover generalist duties, while she did. Gamble also cites a 2013 grievance filed by the Union on her behalf. The grievance alleged that Cook County had violated the CBA by failing to adjust Gamble's pay or work conditions after she had complained that the differences were discriminatory. Cook County settled the grievance by raising Gamble's pay, and this, she contends, is evidence of race discrimination (never mind that the raise boosted Gamble's pay above Fish's for a time).

Gamble is correct that a factfinder may infer discrimination when an employer treats a Black employee less favorably than similarly situated non-Black employees. *de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 559 (7th Cir. 2019). But as we explained, the non-Black physicians Gamble presents are not similarly situated. Fish had more experience and focused on minimally invasive surgeries. And Rosenzweig was not employed as a generalist at all. So even if Fish or Rosenzweig were paid more for their work, or they had easier workloads,

those facts do not support an inference of race discrimination. And Gamble presents no other evidence suggesting that her pay or demanding work responsibilities were because of her race. Given the paucity of evidence to support her claims, we agree that no reasonable jury could find that Cook County, Linn, or Abrego subjected Gamble to race discrimination.

**III.    Conclusion**

The judgment of the district court is AFFIRMED.