In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 21-2327

EMILY LEWIS,

*Plaintiff-Appellant,*

*v.*

INDIANA WESLEYAN UNIVERSITY,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:19-cv-00451-WCL-SLC — **William C. Lee**, *Judge.*

———————————

ARGUED FEBRUARY 9, 2022 — DECIDED JUNE 10, 2022

———————————

Before FLAUM, BRENNAN, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Dr. Emily Lewis, a 60-year-old African American woman, alleges that Indiana Wesleyan University discriminated against her when it took away her supervisory responsibilities and ultimately eliminated her position. She brought various claims against the University under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and the Age Discrimination in Employment Act. The district court granted summary judgment in favor of the University on her

retaliation claims and concluded that she had waived her age discrimination claim. But the court's summary judgment opinion did not address Dr. Lewis's race discrimination claim. As explained below, we affirm in part, vacate in part, and remand for consideration of her race discrimination claim.

## I. Background

The following facts are undisputed unless otherwise noted. Indiana Wesleyan University is a private Christian university based in Marion, Indiana. Dr. Lewis began working there in 2017 as Director of Instructional Design. In that role, she supervised a team of five instructional designers, who assisted with curriculum development across the University. Dr. Lewis initially reported to Lorne Oke, the Executive Director of the Center for Learning and Innovation. Not long after starting her job, Dr. Lewis informed Oke that she believed her subordinates (all of whom were white) did not take direction from her on account of her race.

In July 2018, Dr. Lewis met with Oke and Diane McDaniel, the University's Diversity Officer, to discuss her concerns. During the meeting, Oke told Dr. Lewis that she should get "Black woman syndrome off of [her] shoulders" and that she was "too smart." On August 6, 2018, Oke informed Dr. Lewis that he intended to remove her from her supervisory position and sent her home for the day. According to Oke, he merely wanted Dr. Lewis to take some time away from her subordinates until a new position could be created. Dr. Lewis, on the other hand, believed she was being fired because of her race. She immediately contacted McDaniel and Matt Lucas, the University's Chancellor.

On August 8, 2018, Lucas, McDaniel, and human resources personnel met with Oke and Dr. Lewis to discuss the situation. Dr. Lewis claims she was not told that her position was being changed; instead, she was allowed to work from home on intermittent assignments for two months. In any event, Oke created a new title for Dr. Lewis: Director of Support for Research and Learning. This new role offered the same pay and benefits as her prior role but did not involve any supervisory or leadership responsibilities.

Meanwhile, the University planned to merge the Center for Learning and Innovation with another department. Erin Crisp was selected to lead the combined entity as the Associate Vice President for Innovation. In preparation for this transition, Crisp spoke with Oke about his experience supervising Dr. Lewis. In February 2019, Crisp emailed Chancellor Lucas explaining that she had decided to eliminate Dr. Lewis's position. Crisp wrote that she believed research was an essential part of her own role, that she did not feel comfortable delegating those responsibilities to Dr. Lewis, and that an employee who is "unable to lead or be led will continue to undermine [our] culture." In the same email, Crisp noted that a research assistant "would be very valuable, but that isn't what this position entails." There is no evidence in the record that Crisp knew of Dr. Lewis's August 2018 discrimination complaint when she decided to eliminate Dr. Lewis's position.

Crisp began supervising Dr. Lewis in April 2019. In June 2019, Crisp informed Dr. Lewis that her position was being eliminated. Crisp gave her the option of accepting a research assistant position the following month or being terminated in August 2019. Dr. Lewis declined the research assistant position and ceased working at the University. Crisp did not hire

anyone else for the research assistant position, and some of Dr. Lewis's responsibilities were absorbed by members of Crisp's team.

Dr. Lewis brought various employment discrimination claims against the University, only three of which are relevant to this appeal. First, Dr. Lewis alleges that her August 2018 "demotion" from Director of Instructional Design to Director of Support for Research and Learning was retaliatory (the "retaliatory demotion claim"). Second, she alleges that her 2019 termination was in retaliation for her complaint of discrimination in 2018 (the "retaliatory termination claim"). Third, Dr. Lewis alleges that her termination was discriminatory on the basis of her race and age.

The district court granted summary judgment in favor of the University on Dr. Lewis's retaliatory demotion and retaliatory termination claims. The court also concluded that Dr. Lewis had waived her age discrimination claim by failing to raise it after the University moved for summary judgment. But the district court did not address Dr. Lewis's race discrimination claim as to her 2019 termination. Dr. Lewis timely appealed.

## II. Discussion

We review the district court's grant of summary judgment de novo. *Chatman v. Bd. of Educ. of City of Chi.*, 5 F.4th 738, 744 (7th Cir. 2021). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We construe all facts and draw all reasonable inferences in the nonmoving party's favor, but the moving party may prevail "by showing an absence of evidence to

support" the nonmoving party's claims. *Tyburski v. City of Chicago*, 964 F.3d 590, 597 (7th Cir. 2020).

Title VII prohibits employers from discriminating against their employees on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). The Age Discrimination in Employment Act ("ADEA") further prohibits discrimination against workers aged 40 years or older. 29 U.S.C. § 623(a)(1). To succeed on a Title VII discrimination claim, an employee must prove (1) that she is a member of a protected class, (2) that she suffered an adverse employment action, and (3) causation. *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018). The legal analysis for discrimination claims under Title VII and § 1981 is largely identical. *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 788 (7th Cir. 2019). Race discrimination claims under Title VII simply require that race be a "motivating factor in the defendant's challenged employment decision." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1017 (2020). For a § 1981 claim, however, "a plaintiff bears the burden of showing that race was a but-for cause of [her] injury." *Id*. at 1014. Similarly, age discrimination claims require a private-sector employee to prove that age was the but-for cause of the adverse employment action. *Tyburski*, 964 F.3d at 598.[1]

One way of proving employment discrimination is the familiar *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

---

[1] *Cf. Babb v. Wilkie*, 140 S. Ct. 1168, 1173–74, 1175–76 (2020) (distinguishing between the ADEA's private-sector and public-sector provisions and holding that age need not be the but-for cause of a federal employee's personnel action).

To establish a prima facie case of employment discrimination, the employee must show that "(1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably." *Tyburski*, 964 F.3d at 598. When an employee's position is eliminated as part of a mini-reduction in force ("mini-RIF"), the fourth element of the prima facie case becomes whether the employee's duties were absorbed by workers outside her protected class. *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 725 (7th Cir. 2008) (Title VII); *Filar v. Bd. of Educ. of City of Chi.*, 526 F.3d 1054, 1060 (7th Cir. 2008) (ADEA). If an employee meets each element of her prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. The burden then shifts back to the employee to show why the employer's explanation is pretextual. *Tyburski*, 964 F.3d at 598.

At summary judgment, courts ask whether the evidence "would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Abrego*, 907 F.3d at 1012 (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)); *see also Tyburski*, 964 F.3d at 598 (applying the same test in the ADEA context). We have emphasized that "courts must assess the evidence 'as a whole, rather than asking whether any particular piece of evidence proves the case by itself,' regardless of whether the court also analyzes the evidence pursuant to *McDonnell Douglas*." *Tyburski*, 964 F.3d at 598 (quoting *Ortiz*, 834 F.3d at 765).

## A. Discriminatory Termination

Dr. Lewis argues that her discriminatory termination claims—on the basis of race and age—should have survived summary judgment under *McDonnell Douglas*. She further contends that her age discrimination was not waived below.

Two of the four elements of her prima facie case are straightforward: she is a member of a protected class (a Black woman over the age of 40), and her termination constitutes an adverse employment action. We assume for the sake of argument that Dr. Lewis was meeting the University's legitimate expectations, notwithstanding mixed evidence in the record as to her performance. The parties primarily disagree as to the fourth element: (a) whether similarly situated employees were treated more favorably, or (b) under a mini-RIF theory, whether her duties were absorbed by employees not in her protected class.

### 1. Race Discrimination

Our Circuit Rule 50 provides in relevant part:

> Whenever a district court resolves any claim or counterclaim on the merits, … the judge shall give his or her reasons, either orally on the record or by written statement. The court urges the parties to bring to this court's attention as soon as possible any failure to comply with this rule.

Nonetheless, the district court failed to explain why it was granting summary judgment on Dr. Lewis's claim that her termination was racially discriminatory. As a result, we cannot be sure that the district court adequately considered the merits of that claim.

The University argues that remand would be futile, and we can affirm for any basis supported by the record. *O'Brien v. Caterpillar Inc.*, 900 F.3d 923, 928 (7th Cir. 2018). But given the fact-specific nature of Dr. Lewis's race discrimination claim, we decline to assess it in the first instance. Accordingly, we vacate summary judgment as to that claim and remand it to the district court.

### 2.  *Age Discrimination*

We agree with the district court that Dr. Lewis waived her age discrimination claim by failing to adequately develop it in her opposition to summary judgment. *See Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 925 (7th Cir. 2019) ("We apply waiver even if the issue may have been before the district court in more general terms, still holding a party to its responsibility to make a specific argument.") (internal quotation marks omitted); *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) ("[A]rguments that have been raised may still be waived on appeal if they are underdeveloped, conclusory, or unsupported by law.").

In her briefing below, Dr. Lewis made passing reference to the legal standard for age discrimination claims by citing the *McDonnell Douglas* framework. Yet she neglected to mention (much less grapple with) the ADEA's requirement that age was the but-for cause of her termination. *Tyburski*, 964 F.3d at 598. Her evidence of Oke's "discriminatory animus" sounds exclusively in race discrimination, not age discrimination. Setting aside whether Oke's discriminatory animus can or should be imputed to Crisp as the final decisionmaker, Dr. Lewis failed to point to evidence before the district court suggesting her age drove the decision to eliminate her position. Without more, her age discrimination claim is waived.

## B. Retaliation

Title VII and the ADEA prohibit employers from retaliating against their employees because an employee complained of discrimination. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). To survive summary judgment on a retaliation claim, a plaintiff must come forward with sufficient evidence for a reasonable jury to conclude that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) causation. *Rozumalski*, 937 F.3d at 924 (Title VII); *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 464 (7th Cir. 2016) (ADEA).

To show causation, employees may point to circumstantial evidence, such as "suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual." *Rozumalski*, 937 F.3d at 924 (internal quotation marks omitted). Plaintiffs may also make use of the *McDonnell Douglas* framework in the retaliation context. *See, e.g.*, *McDaniel v. Progress Rail Loco., Inc.*, 940 F.3d 360, 370 (7th Cir. 2019). Ultimately, "[t]he key question is whether a reasonable juror could conclude that there was a causal link between the protected activity or status and the adverse action." *Rozumalski*, 937 F.3d at 924 (citing *Ortiz*, 834 F.3d at 765–66).

### 1. Retaliatory Demotion

The district court concluded that Dr. Lewis's retaliatory demotion claim was time-barred under Title VII and the ADEA, but because § 1981 has a longer statute of limitations, the court considered the claim on the merits.[2] Nevertheless,

---

[2] *Compare Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 269 (7th Cir. 2004) (concluding that four-year statute of limitations applied to a

we agree with the district court that this claim cannot survive summary judgment. Even when viewed in the light most favorable to Dr. Lewis, the facts simply do not support a causal connection between her protected activity and an adverse employment action. To recap, on August 6, 2018, Oke informed Dr. Lewis that he intended to remove her from her supervisory position. Dr. Lewis then contacted the University's Chancellor and Director of Diversity, explaining that she believed Oke's decision was racially motivated. After a meeting on August 8, Oke created a new director-level position for Dr. Lewis.

Because Dr. Lewis's protected activity (reporting a claim of race discrimination) did not occur until after the August 6 conversation with Oke, her protected activity could not have caused Oke to demote her. The University adds that her new role provided the same pay and benefits, so it could not have constituted a demotion. *See, e.g.*, *Place v. Abbott Labs.*, 215 F.3d 803, 810 (7th Cir. 2000) (concluding that an employee's transfer to another position with the same title, pay, and benefits was not an adverse action). Dr. Lewis counters that she lost her supervisory and leadership responsibilities. We need not decide whether her new role amounted to a demotion, however, because Oke had decided to remove her supervisory responsibilities before she engaged in protected activity.

### 2. Retaliatory Termination

Likewise, Dr. Lewis's retaliatory termination claim cannot survive summary judgment. The undisputed evidence shows

---

retaliation claim under § 1981 because it was premised on conduct that took place after the formation of an employment contract), *with* 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d)(1) (ADEA).

that when Crisp decided to eliminate Dr. Lewis's position in February 2019, Crisp was unaware that Dr. Lewis had complained of discrimination. It follows that Crisp could not have acted with retaliatory animus. *Tyburski*, 964 F.3d at 603 ("For a superior to have retaliated against an employee based on protected activity, the superior must have had knowledge of that protected activity."). Because Dr. Lewis has failed to make out a prima facie case of retaliation, we do not reach her argument that the University's stated reasons for terminating her were pretextual.

On appeal, Dr. Lewis makes a belated attempt to invoke a cat's paw theory of liability. *See McDaniel*, 940 F.3d at 370 ("In employment discrimination cases, the 'cat's paw' is the unwitting manager or supervisor who is persuaded to act based on another's illegal bias."). Dr. Lewis suggests that Oke's retaliatory animus should be imputed to Crisp, even though there is no evidence that Crisp knew of her protected activity. Unfortunately, she failed to develop this theory below, so she has waived it. *Rozumalski*, 937 F.3d at 925.

### III. Conclusion

The district court correctly granted summary judgment in favor of the University on Dr. Lewis's retaliation claims, and Dr. Lewis waived her age discrimination claim by failing to preserve it below. But because the district court did not explain why it was granting summary judgment on Dr. Lewis's race discrimination claim, we decline to evaluate that claim in the first instance. The district court's judgment is AFFIRMED in part, VACATED in part, and REMANDED for further proceedings consistent with this opinion.