In the

# United States Court of Appeals

### For the Seventh Circuit

No. 24-1297

KARL RABENHORST,

*Plaintiff-Appellant,*

*v.*

KRISTI L. NOEM, Secretary,
United States Department of
Homeland Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cv-03620 — **Manish S. Shah**, *Judge.*

ARGUED JANUARY 22, 2025 — DECIDED DECEMBER 22, 2025

Before BRENNAN, *Chief Judge*, and ROVNER, and ST. EVE,
*Circuit Judges.*

ROVNER, *Circuit Judge.* In this employment discrimination
action, Karl Rabenhorst, who worked for the Federal Emergency Management Agency ("FEMA"), an agency within the
domain of the Department of Homeland Security ("DHS"), alleges that he was improperly removed from a relief operation

and suspended without pay because of his sex and age, subjected to a hostile work environment, and retaliated against based on his pursuit of an internal complaint of sex discrimination, all in violation of Title VII of the Civil Rights Act of 1968, 42 U.S.C. § 2000e-2(a)(1) & e-3(a), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a). The district court granted summary judgment to the DHS Secretary, and Rabenhorst appeals. *Rabenhorst v. Mayorkas*, No. 21 CV 3620, 2024 WL 230936 (N.D. Ill. Jan. 22, 2024). We affirm the district court's judgment.

## I.

Following a 28-year career in the Navy and Naval Reserve, Rabenhorst was hired by FEMA in 2009 as a technical hazards specialist focusing on radiological emergency preparedness. He was originally assigned to work with state officials in Wisconsin, Michigan, and Ohio to develop and review emergency-preparedness plans. In 2017, he was reassigned to a post that did not involve work with state officials, and Sean O'Leary, who served as the chief of FEMA's Technological Hazards branch, became Rabenhorst's supervisor.

In the years preceding the events at issue in this case, Rabenhorst was twice reprimanded for what were deemed to be inappropriate interactions with state officials. In April 2016, without his supervisor's knowledge or consent, he emailed a Michigan assistant attorney general challenging him on the interplay between federal and state law. When his supervisor learned of the email from a Michigan official, Rabenhorst was reprimanded for failing to follow the supervisory chain of command. The written reprimand noted that he had been counseled on two prior occasions about sending aggressive or argumentative emails. In June 2017, during a

testy interchange with Ohio state officials, Rabenhorst asked, rhetorically, whether any of them spoke English. When his question was met with silence, Rabenhorst remarked, "This is [b]ullshit." Ohio officials subsequently asked that Rabenhorst not be assigned to work on future Ohio events, and he was reprimanded for engaging in inappropriate behavior. In both instances, Rabenhorst was warned that engaging in further behavior of this sort could result in additional discipline, up to and including discharge.

During an August 2017 disaster preparedness exercise, Rabenhorst was overheard speaking with a contractor and remarking that "O'Leary [his supervisor] had his head up his ass." On being told of this incident, O'Leary warned Rabenhorst not to speak with contractors and to direct any complaints about the exercise through the FEMA chain of command. Yet the following day, Rabenhorst spoke at length with another contractor about the exercise.

After the August 2017 incidents, O'Leary was preparing to discipline Rabenhorst for insubordination and interfering with contractors. Before he followed through on that intent, Rabenhorst was deployed to Puerto Rico in October 2017 in the wake of Hurricane Maria.

Based on his military aviation and air operations experience, Rabenhorst was assigned to help oversee Puerto Rico air operations related to the disaster relief effort, including the airlifting of emergency aid to the island and medical evacuations from the island. In that capacity, Rabenhorst was working with female FEMA employees in their twenties who, according to him, knew nothing about air operations and management. Tensions arose between Rabenhorst and his female coworkers, and a number of the women became

uncomfortable working with him. During staff meetings, Rabenhorst reportedly used profanity, treated his female coworkers and supervisors with disrespect, and on one occasion referred to one or more of female colleagues as "sorority girls" and remarked as to one of them that he had "paddled the butts of daughters who were older than her." Ultimately, approximately one month after Rabenhorst arrived in Puerto Rico, Josie Arcurio, the FEMA official serving as chief of staff for the relief effort, decided to remove him from the operation for cause, in view of his treatment of co-workers, and had him escorted out of the air operations branch in the view of other employees.

Between October and December 2017, Rabenhorst contacted the DHS Office of Equal Rights, engaged in the equal employment opportunity counseling process, and ultimately, on December 6, filed an internal complaint asserting employment discrimination based on his age and sex, focused on his removal from the Puerto Rico relief effort (we shall refer to this as his "EEO complaint"). O'Leary avers that he was not aware of the filed EEO complaint, but Rabenhorst testified that he had previously told O'Leary, upon his return from Puerto Rico, that he intended to file such a complaint. Rabenhorst avers that FEMA never responded to this complaint, and the Secretary does not dispute that averment.

Meanwhile, O'Leary, on receiving the details from Arcurio regarding Rabenhorst's misconduct during his Puerto Rico deployment, decided in November 2017 to discipline Rabenhorst based on his conduct both prior to and during that deployment. In June 2018, O'Leary sent Rabenhorst notice of a proposed suspension for 14 days based on charges that Rabenhorst had exhibited conduct unbecoming a federal

employee, failed to follow instructions during the August 2017 exercise, and engaged in disruptive conduct during the Puerto Rico deployment. The notice invited Rabenhorst to respond orally or in writing; he submitted a 200-page written response. Multiple follow-up meetings between O'Leary and Rabenhorst to discuss the proposed discipline were scheduled and then rescheduled by O'Leary, and ultimately, due to O'Leary taking medical leave, the two never met in person to discuss the proposed discipline. Eventually, on October 1, 2018, after considering the record (including Rabenhorst's response), O'Leary decided to suspend Rabenhorst without pay for 13 days for the reasons set forth in the notice of proposed discipline.

In August 2018, O'Leary cancelled Rabenhorst's participation in two FEMA exercises. That same month, Rabenhorst filed a second internal complaint, alleging, among other things, that the then-pending notice of proposed suspension and the exclusion of Rabenhorst from the two exercises were the result of sex and age discrimination and also constituted retaliation for his prior EEO complaint. A report of the investigation was filed on November 5, 2019, and FEMA issued its final agency decision on Rabenhorst's August 2018 complaint in April 2021, denying him relief. Rabenhorst then filed this suit alleging age and sex discrimination, a hostile work environment, and retaliation, all in violation of Title VII and the ADEA.[1]

As noted, Judge Shah ultimately granted summary judgment to Rabenhorst. With respect to the claims of age and sex

---

[1] Rabenhorst was later removed from federal service in May 2023. His termination is not at issue in this suit.

discrimination, the parties analyzed the case under the *McDonnell Douglas* burden-shifting framework, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and the court did the same. That framework required Rabenhorst in the first instance to make out a prima facie case of discrimination by establishing four elements: (1) that he is a member of a protected class; (2) that he was meeting his employer's expectations; (3) that he suffered an adverse employment action; and (4) that similarly situated employees who were not members of his protected class were treated more favorably than he was. *E.g., Gaines v. Dart*, 158 F.4th 829, 837–38 (7th Cir. 2025). If a plaintiff succeeds in making out a prima facie case of discrimination, then the defendant must identify a legitimate, non-discriminatory reason for the adverse employment action. *E.g., Cunningham v. Austin*, 125 F.4th 783, 788 (7th Cir. 2025) (quoting *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 760 (7th Cir. 2022)). Once that reason is articulated, the burden returns to the plaintiff to present evidence that this rationale was pretextual. *Id.*

The first element of the prima facie case was undisputed: Rabenhorst was in a protected class based on his age (over 40) and sex (male). 2024 WL 230936, at *4.

But Rabenhorst failed to establish the second element of the prima facie case, in that he did not show he was meeting his employer's legitimate work expectations: "he was repeatedly insubordinate and abusive to his superiors and coworkers." *Id.* at *4.

As for the third element, the court agreed that Rabenhorst had suffered two adverse employment actions: he was suspended without pay for 13 days, and he was also removed from the Puerto Rico relief effort, which had adverse effects

on his work hours, compensation, and career prospects. *Id.* at *5.

But as to the fourth and final element of the prima facie case, the court found that Rabenhorst had not shown that similarly-situated employees who were women and/or significantly younger than he[2] were treated more favorably than he was. Rabenhorst argued, for example, that his younger female coworkers in Puerto Rico were not disciplined for their failure to understand FEMA rules and procedures, whereas he was treated unfairly for his efforts to help them. Yet, as the district court pointed out, Rabenhorst was not disciplined for failing to understand FEMA rules and procedures; rather, he was disciplined for failing to follow instructions, engaging in disruptive and otherwise inappropriate behavior, and conducting himself in a manner unbecoming of a federal employee. The record did not suggest that the younger female coworkers he cited as comparators had engaged in comparable misconduct. *Id.* at *5.

The court added that even if Rabenhorst had established a prima facie case of discrimination, he had presented no evidence suggesting that the stated reasons for O'Leary's decision to suspend him were pretextual or that O'Leary was otherwise motivated by discriminatory animus. *Id.*

---

[2] As we noted in *Gaines*, a plaintiff alleging age discrimination in violation of the ADEA need not identify comparators who were outside of the protected class—i.e., who were younger than 40 years old—in order to meet this element of the prima facie case; he need only identify comparators who were not "insignificantly younger" than he was. 158 F.4th at 838 (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996)).

As for the hostile environment claim, the court found that Rabenhorst had presented no evidence that he was subject to an objectively offensive work environment or that any objectionable behavior was severe or pervasive. Additionally, Rabenhorst made no showing that any objectionable conduct was based on his age or sex. *Id.* at *6.

Finally, the court found the evidence insufficient to support Rabenhorst's retaliation claim, which was limited to conduct protected by Title VII.[3] The court noted that for purposes of this claim, the only protected conduct was the EEO claim he pursued between October and December 2017. Rabenhorst had previously filed whistleblower complaints and grievances in 2016, but those related to regulatory violations and his reprimands for inappropriate communications with state officials rather than to alleged Title VII violations. As for the 2017 EEO claim challenging his removal from the Puerto Rico deployment, the evidence did not suggest a causal link between that statutorily-protected activity and O'Leary's decision to suspend him without pay: There was evidence of suspicious timing, in that O'Leary had decided to move ahead with the disciplinary process in November 2017, around the same time that Rabenhorst submitted his EEO complaint (although the suspension was not formally ordered until June 2018); but there was nothing more than that. The record also showed that O'Leary had already formed the intent to discipline Rabenhorst before Rabenhorst deployed to Puerto Rico in October 2017. And it was after Arcurio advised O'Leary of Rabenhorst's conduct in Puerto Rico that O'Leary initiated the disciplinary process, thus supplying an innocent

---

[3] Rabenhorst did not contend that he was subject to retaliation for pursuing his rights under the ADEA. 2024 WL 230936, at *6 n.6.

explanation for the timing. Although Rabenhorst argued that Arcurio herself was aware of his protected activity and was the true decisionmaker regarding the suspension, the court found no evidence that she was aware of his protected activity, nor was there evidence that Arcurio was involved in the decision to suspend Rabenhorst—rather, O'Leary was the one and only person who made that decision. There was nothing suggesting that O'Leary may have harbored a retaliatory animus; nothing indicating that similarly-situated employees were treated more leniently than Rabenhorst; and nothing suggesting that O'Leary's stated reasons for disciplining Rabenhorst were pretextual. "There is no evidence that would allow a jury to find that O'Leary's decision to suspend Rabenhorst without pay for 13 days was motivated by anything but Rabenhorst's misconduct." *Id.* at *7.

## II.

For the reasons set forth below, the district court did not err in entering summary judgment in the Secretary's favor. We review that decision de novo, construing the facts in Rabenhorst's favor and granting him the benefit of all reasonable inferences that may be drawn from the record evidence. *Culp v. Caudill*, 140 F.4th 938, 942 (7th Cir. 2025), *cert. denied*, No. 25-314, 2025 WL 3506994 (U.S. Dec. 8, 2025).

We note at the outset that the district court disregarded certain additional proposed facts that Rabenhorst asserted in his response to the Secretary's Local Rule 56.1 statement of undisputed facts. *See* N.D. Ill. Local Rule 56.1(e). Generally speaking, those factual assertions were aimed at placing Rabenhorst's overall conduct as an employee in a more favorable light. For example, regarding the April 2016 incident in which Rabenhorst had emailed a Michigan assistant attorney

general on a legal point, Rabenhorst purported to dispute "as misleading" the Secretary's account of the incident and proposed additional facts to explain why the issue was important, to note that Michigan officials were taking the position that state law superseded federal law, and to suggest that he had framed his email inquiry in a civil manner. Similarly, regarding the June 2017 reprimand for his inappropriate interactions with Ohio state officials, Rabenhorst again responded that the Secretary's account was misleading and proposed additional facts suggesting that an Ohio official was really upset because a report authored by Rabenhorst was insufficiently complementary to the state. The court disregarded many of Rabenhorst's factual assertions along these lines on the ground that Rabenhorst had either failed to properly admit or deny the Secretary's posited facts as required by the local rule, *see* Local Rule 56.1(e)(2) ("Each response must admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact."), or because the facts that Rabenhorst asserted in response were not supported by the record materials he cited, *see* Local Rule 56.1(d)(2) ("Each asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it."). 2024 WL 230936, at *2 n.2.

A district court's application and enforcement of local summary judgment rules is a discretionary matter, and we have routinely upheld strict enforcement of such rules. *E.g., Upchurch v. Indiana*, 146 F.4th 579, 586 (7th Cir. 2025); *Taylor v. Schwarzhuber*, 132 F.4th 480, 491–92 (7th Cir. 2025). We see no abuse of discretion in the court's decision in this regard. *See Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 359 (7th Cir. 2009); *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527–28 (7th Cir. 2000); *Brasic v. Heinemann's Inc. Bakeries*, 121

F.3d 281, 283–84 (7th Cir. 1997); *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1313 (7th Cir. 1995).

The court also struck certain portions of Rabenhorst's declaration (cited in support of his own statement of additional facts, *see* Local Rule 56.1(b)(3)) where the declaration supplied no foundation establishing his personal knowledge of the facts asserted. 2024 WL 230936, at *1. The court committed no error in that ruling either. *See* Fed. R. Civ. P. 56(c)(4); *Packer v. Trs. of Ind. Univ. Sch. of Med.*, 800 F.3d 843, 850 (7th Cir. 2015).

In sum, we shall review the district court's decision to grant summary judgment in favor of the Secretary based on the same evidentiary record that the district court consulted.

More generally, Rabenhorst argues that the district court ignored evidence that he was a highly qualified and experienced employee who was not afraid to call out his colleagues' failure to comply with the professional and legal demands of their jobs. Rabenhorst sees his history in this regard as the reason why O'Leary and Arcurio singled him out for adverse treatment. Of course, this gets him nowhere with his discrimination claims unless he can somehow link any animus arising from this history of criticism to his age and/or sex. He comes closest to doing so when he suggests that he was booted from the Puerto Rico relief effort because his young, inexperienced female co-workers did not want to be told what to do by an older man. But with respect to that removal as well as his unpaid suspension, Rabenhorst does not come to grips with the misconduct that the Secretary has cited as the legitimate, non-discriminatory basis for taking adverse action against him—misconduct that for the most part he does not factually dispute. Likewise, although Rabenhorst's theory of the case certainly bears the hallmarks of reprisal, he fails to

link that reprisal to activity that is protected by Title VII, as he must in order to prevail on his retaliation claim.

Ultimately, as we explain below, Rabenhorst has not identified evidence that suggests he was treated less favorably than younger and/or female employees who had engaged in similar misconduct or that his discipline was tainted by animus based on age or sex or the fact that he had engaged in activity protected by Title VII.

A. *Age or sex discrimination*

As noted above in our summary of the district court's decision, one of the four requisites of a prima facie case of discrimination under *McDonnell Douglas* is that the plaintiff was meeting his employer's work expectations. The district court correctly found that Rabenhorst did not meet this element; consequently, he failed to establish a prima facie case of discrimination under *McDonnell Douglas*. During the August 2017 preparedness exercise, Rabenhorst had criticized his supervisor (O'Leary) in crude terms to a FEMA contractor, and then he violated O'Leary's directive not to speak with contractors the following day by speaking with another contractor about the exercise. And during his October 2017 deployment to Puerto Rico, Rabenhorst used abusive and demeaning language and otherwise treated his coworkers and superiors inappropriately, culminating in his removal from the relief operation. As he did below, Rabenhorst largely insists that O'Leary and his other co-workers and superiors did not know what they were doing, were violating FEMA rules and procedures, and were otherwise incompetent, whereas he was doing his job correctly and conscientiously.

But Rabenhorst fails to acknowledge the actual misconduct for which he was disciplined. Even if we assume that Rabenhorst's perception of his superiors and coworkers was correct, what he was disciplined for was the insubordination, disrespect, and intemperance in the way he expressed his concerns and interacted with co-workers and contractors. The Secretary, like any other employer, has a legitimate interest in having her employees respect the chain of command and follow orders. Rabenhorst was twice admonished not to repeat the sort of confrontational and insulting behavior he engaged in with Michigan and Ohio officials in 2016 and 2017, and yet in August 2017, he criticized his superior in crude terms to a contractor during a preparedness exercise (and, after a warning not to interact with contractors, again spoke about the exercise with a contractor the very next day). Then, during the Puerto Rico deployment in October, he condescended to, demeaned, and openly insulted his younger female co-workers and his supervisors. Rabenhorst has not given us any reason to question his employer's conclusion that he was not meeting the legitimate expectations of his position.

Likewise, Rabenhorst failed to show that there were younger and/or female workers who were similarly situated to him, in that they engaged in comparable misconduct, but who were treated more favorably. Again, he argues that the young women he worked with in Puerto Rico, for example, were not qualified for the work responsibilities assigned to them and as a result did not carry out their assigned duties effectively, but their purported lack of qualifications and ability is not comparable to his own misconduct: he presented no evidence that they were guilty of inappropriate verbal conduct or insubordination.

Finally, as Judge Shah observed, Rabenhorst otherwise identifies no evidence that either O'Leary (who suspended him) or Arcurio (who both removed him from the Puerto Rico operation and conveyed her negative assessment of Rabenhorst's conduct to O'Leary) were motivated by age or sex in deciding to discipline him. He has failed to make a prima facie showing of age or sex discrimination, and the evidence in the aggregate does not otherwise give rise to an inference that his age or sex played an animating role in the adverse employment actions the Secretary took against him. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *Gaines*, 158 F.4th at 838 (quoting *Vichio v. US Foods, Inc.*, 88 F.4th 687, 691 (7th Cir. 2023)).

B. *Hostile environment*

There is an initial question whether Rabenhorst waived consideration of his hostile environment claim, as he did not meaningfully respond to the defendant's arguments for summary judgment on this claim below. Even so, the district court chose to address the claim on its merits. 2024 WL 230936, at *5–*6. We may set aside the waiver issue.

The claim fails on its merits. Other than being marched out of the Puerto Rico office under escort in a humiliating manner, Rabenhorst has identified no facts suggesting that he was required to endure a hostile work environment. And that one instance of harsh treatment, so far as the record shows, occurred in execution of a legitimate disciplinary decision. Setting aside all other questions as to the basis for the hostile environment claim, there is no evidence that any alleged harassment or other adverse treatment of Rabenhorst was based on his age or sex. *See, e.g., Arnold v. United Airlines, Inc.*, 142 F.4th

460, 476 (7th Cir. 2025) (plaintiff must show that the harassment was based on membership in a protected class).

## C. *Retaliation in violation of Title VII*

Finally, the evidence does not establish a question of fact barring summary judgment as to Rabenhorst's claim that he suffered retaliation as a result of engaging in conduct protected by Title VII. The only protected activity at issue is the EEO complaint and related activity that Rabenhorst engaged in between October and December 2017, following his return from Puerto Rico.[4] It was after Rabenhorst filed his EEO complaint that O'Leary decided to suspend Rabenhorst for 13 days, a disciplinary measure we agree amounts to an adverse action that might dissuade someone from taking steps to invoke their statutory rights. But apart from the sequence of events, there is no evidence suggesting that O'Leary's decision may have been influenced by Rabenhorst's EEO complaint.

---

[4] In March 2016, Rabenhorst filed a whistleblower complaint with the DHS Office of the Inspector General (followed up with complaints to other officials) based on his concerns that O'Leary was improperly waiving disaster-preparedness evaluation criteria; he also filed multiple grievances after he gave O'Leary unsolicited counseling on regulatory requirements and violations and he was reprimanded for insubordination and interference for doing so. As the district court noted, his whistleblower complaint and grievances do not qualify as protected activity for purposes of his retaliation claim in this case, as they were not conduct protected by Title VII. *See Alley v. Penguin Random House*, 62 F.4th 358, 362 (7th Cir. 2023) (employee engages in activity protected by Title VII by either filing a charge of discrimination or in some way participating in an investigation, proceeding, or hearing under Title VII or other employment statutes, or by opposing an unlawful employment practice).

The evidence reflects that O'Leary had intended to pursue discipline against Rabenhorst before Rabenhorst was deployed to Puerto Rico, and so far as the record reveals, when O'Leary learned from Arcurio of Rabenhorst's behavior during that deployment, that simply reinforced his intent and propelled him forward. There is, we acknowledge, a dispute of fact as to whether O'Leary was aware of Rabenhorst's EEO complaint when he proposed that Rabenhorst be suspended (recall that Rabenhorst testified he advised O'Leary of his intent to file that complaint). But beyond his purported knowledge of the complaint, there is no evidence that O'Leary disciplined Rabenhorst in part because of that complaint. To the contrary, the evidence indicates that Rabenhorst was not meeting his employer's legitimate expectations, and it was his failure in that regard that was the basis for O'Leary's decision.

Rabenhorst also ascribes malevolent motives to Arcurio vis-à-vis his suspension,[5] but Arcurio was not the decisionmaker in that regard. True, she reported Rabenhorst's misconduct in Puerto Rico to O'Leary and her reports obviously factored into O'Leary's suspension decision, but there is no evidence suggesting that she participated in the decision to discipline Rabenhorst.[6]

### III.

We AFFIRM the district court's judgment.

---

[5] Arcurio made two reports to O'Leary, the second of which postdated the commencement of Rabenhorst's engagement with the DHS Office of Equal Rights.

[6] Rabenhorst does not pursue a "cat's paw" theory vis-à-vis the negative reports that Arcurio made to O'Leary. *See Gaines*, 158 F.4th at 835.